IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BROCIOUS TRUCKING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 09-741 |
| | ) | |
| v. | ) | Magistrate Judge Bissoon[1] |
| | ) | |
| BFL, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**I. MEMORANDUM**

For the reasons that follow, Defendants' Motions to Dismiss (Docs. 50 & 53) will be denied, without prejudice to Defendants' renewal of their arguments on summary judgment, as appropriate.

**BACKGROUND**

In this diversity action, Plaintiff alleges that BFL, Inc. ("BFL") and Indiana Capital & Leasing, Inc. ("Indiana Capital") breached multiple contracts concerning their purchase of Plaintiffs' trucking business and related assets. *See generally* 2d Am. Compl. (Doc. 43) at ¶ 30-70.[2] The Corporate Defendants made some payments under the contracts, but fell behind and eventually ceased making payments. *See generally id.* at ¶ 71.

In January, 2008, the parties entered a Master Settlement Agreement (at times, "the Agreement") to resolve all outstanding claims regarding their underlying contracts.

---

[1] By consent of the parties, the undersigned sits as the District Judge in this case. *See* Consent forms (Docs. 23 & 24).
[2] BFL and Indiana Capital will, at times, be referred to collectively as "the Corporate Defendants."

*See id.* Thereafter, the Corporate Defendants failed to make payments under the Master Settlement Agreement, and Plaintiff brings breach of contract claims against the Corporate Defendants, and their sole shareholders, Terry Wallace ("Wallace") and William M. Grojean ("Grojean"; collectively, "the Individual Defendants"). *See generally id.* at Count I (un-numbered in original); *cf. also id.* at ¶¶ 7-8 (Wallace is president of BFL and owns 45% of its stock, and Grojean owns remaining 55%) *and id.* at ¶¶ 9-10 (Wallace is president of Indiana Capital, and he and Grojean co-own company).

Plaintiff also claims that the Corporate and Individual Defendants and Riverside Transport, Inc. ("Riverside") violated the Pennsylvania Uniform Fraudulent Transfers Act, 12 Pa. Cons. Stat. § 5101, *et seq*. *See* 2d Am. Compl. at Counts II-III. Plaintiff alleges that, shortly after the Master Settlement Agreement was entered, the Corporate and Individual Defendants transferred BFL's assets to Riverside, a company owned by Grojean, to avoid payments under the Agreement. *See generally id.* at ¶¶ 100, 138. In connection with their allegations of fraud, Plaintiff also states claims against Wallace and Grojean for civil conspiracy. *See id.* at Count IV.

**ANALYSIS**

    A.    **The Individual Defendants' Motion to Dismiss (Doc. 50)**

Wallace and Grojean first argue that they are not subject to personal jurisdiction in this Court. *See* Individ. Defs.' Br. (Doc. 51) at 6-9.

Plaintiff avers, and the Individual Defendants do not dispute, that Wallace appeared in Pennsylvania to execute the Master Settlement Agreement. *Compare* 2d Am. Compl. at ¶ 26 (Agreement "w[as] negotiated and signed in the Western District of Pennsylvania") *with* Aff. of T. Wallace (filed as Ex. 1 to Doc. 51) (admitting to having "contact[s] with

Pennsylvania . . . related to this transaction"). Although Wallace attempts to invoke the "fiduciary shield" doctrine, under which individuals acting solely within corporate capacities are excused from personal jurisdiction, Pennsylvania federal courts have raised questions regarding the applicability and scope of that doctrine. *See, e.g.*, Kontonotas v. Hygrosol Pharm. Corp., 2009 WL 3245421, *3 & n.1 (E.D. Pa. Oct. 5, 2009) ("the fiduciary shield doctrine has never been used by Pennsylvania state courts"; "due process does not require" it; and each defendant's "contacts with Pennsylvania [must] be assessed individually," in light of "[the person's] degree of control over [the corporation], and the extent to which he stood to gain personally") (citations and internal quotations omitted); *cf. also* Bragg v. Linden Research, Inc., 487 F. Supp.2d 593, 602 (E.D. Pa. May 30, 2007) ("[t]he applicability of [the] so called fiduciary shield doctrine is in dispute," and "neither the Pennsylvania Supreme Court nor the Third Circuit has squarely addressed [its] applicability") (citations and internal quotations omitted). At a minimum, Plaintiff is entitled to discovery regarding Wallace's contacts with Pennsylvania before the Court reaches his jurisdictional challenge. *See, e.g.*, Masselli v. Total Luxury Group, Inc., 2008 WL 4126556, *8 (D. N.J. Aug. 29, 2008) (indicating that, despite potential application of fiduciary shield doctrine, "the interest of justice" dictated that plaintiffs should enjoy discovery regarding jurisdiction); *compare also* Patterson v. Olivet Int'l, Inc., 2009 WL 4722807, *5 (W.D. Pa. Dec. 2, 2009) (exception to fiduciary shield doctrine exists where "a corporate agent [is alleged to be] personally liable for torts committed in a corporate capacity") (citation omitted) *with* discussions *infra* (addressing Plaintiff's allegation that Wallace and Grojean participated in fraudulent transfer of BFL's assets to Riverside).

     Grojean's direct contacts with the forum appear more attenuated. *Cf.* Aff. of W. Grojean (attached as Ex. 2 to Doc. 51) at ¶ 6 (Defendant's contacts were limited to three visits to

Pennsylvania over past twenty-five years, as agent of Riverside, none of which exceeded forty-eight hours).  Nevertheless, Plaintiff alleges that Grojean, like Wallace, participated in a fraudulent transfer, and federal courts have found such conduct sufficient to confer personal jurisdiction under the "effects test."  *See, e.g.*, Gambone v. Lite Rock Drywall, 2008 WL 2875949, *4 (3d Cir. Jul. 25, 2008) (affirming finding of personal jurisdiction where defendant participated in fraudulent conveyance, for purpose of avoiding payments owed to Pennsylvania plaintiff, thereby "expressly aim[ing]" conduct at forum) (citation to binding, published authority omitted).  For all of these reasons, the Individual Defendants have not demonstrated their entitlement to dismissal at this juncture based on lack of personal jurisdiction.

Defense counsel next argue that Wallace and Grojean are not liable under the Master Settlement Agreement because Wallace signed the document on behalf of the Corporate Defendants, not individually.  *See* Individ. Defs.' Br. at 10-12.  Although the Agreement generally appears to limit putative liability to the Corporate Defendants, Paragraph 26 of the Agreement, entitled "Binding Effect," states:

> This Agreement <u>shall be binding on</u>, <u>and inure to the benefit of</u>, all of the [p]arties hereto, as well as all of their predecessors, successors, assigns, <u>shareholders</u>, directors, <u>officers</u>, employees, agents, representatives, consultants, attorneys, heirs, executors, and administrators, as well as any corporation, partnership, or other entity into which any party hereto may merge or with which any party hereto may be consolidated or sold.

Master Stlmt. Agreement (attached as Ex. I to 2d Am. Compl.) at ¶ 26 (emphasis added).

The Individual Defendants were the sole shareholders of BFL and Indiana Capital, and Defense counsel have failed to demonstrate that the Master Settlement Agreement is free of ambiguity regarding Wallace and Grojean's potential liability.  *See generally* DMP Ltd. P'ship v. Caribou Coffee Co., Inc., 2009 WL 2750257, *2 (W.D. Pa. Aug. 26, 2009) ("[a] contract is

4

ambiguous if it is reasonably susceptible [to] different constructions," and "ambiguous [contracts] are interpreted by the finder of fact") (citations and internal quotations omitted).[3]

The Individual Defendants next argue that Plaintiff's contract claims cannot survive Pennsylvania's statute of frauds regarding suretyships. *See* Individ. Defs.' Br. at 12-13 (citing and quoting 33 Pa. Cons. Stat. § 3); *see also generally* Baron v. Pritzker, 2001 WL 1855054, *11 n.16 (Pa. Comm. Pls. Mar. 6, 2001) (identifying 33 Pa. Cons. Stat. § 3 as "[t]he suretyship statute of frauds") . In relevant part, the statute reads:

> No action shall . . . charge the defendant . . . to answer for the debt or default of another, unless the agreement upon which such action [is] brought . . . [is] in writing, and signed by the party to be charged therewith, or [by] some other person by him authorized.

33 Pa. Cons. Stat. § 3 (emphasis added).

To the extent that Wallace and Grojean may be personally liable under the Master Settlement Agreement, Defense counsel have not demonstrated that the suretyship statute applies. *Compare* Packaging Eng'g, LLC v. Werzalit of America, Inc., 2008 WL 4889654, *4 (W.D. Pa. Nov. 12, 2008) ("[w]henever the main purpose and object of the promisor is, not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damages to the other contracting party, his promise is not within the [suretyship] statute") (citation to quoted source omitted) *with* Master Stlmt. Agreement at ¶ 26 (Agreement is "binding on, and inure[s] to the benefit of, all of the [p]arties['] . . .

---

[3] Although the Court will deny Defendant Riverside's Motion to Dismiss on independent grounds, *see* discussion in text, *infra*, Plaintiff also may argue that Riverside is liable under the Master Settlement Agreement. *Compare id.* at ¶ 26 (Agreement binding on Corporate Defendants, "as well as any corporation, partnership, or other entity into which [they] may merge or with which [they] hereto may be consolidated or sold") (emphasis added) *with* Def. Riverside's Br. (Doc. 54) at 5 ("BFL is clearly out of business as a trucking company," and, in December, 2008, "BFL . . . sold all of its assets to Riverside").

shareholders, directors, [and] officers"). The Agreement does not establish a suretyship, and the Individual Defendants have identified no legal basis for invoking 33 Pa. Cons. Stat. § 3.

Even if the suretyship statute somehow applies, Wallace signed the Master Settlement Agreement. *See* Master Stlmt. Agreement at 18. To the extent that Wallace may be personally liable, his signature satisfies the statute of frauds' signed-writing requirement. As to Grojean, the Agreement specifically stated that the parties "represent[ed] and warrant[ed] that <u>all necessary authorizations</u>" were obtained in support of the Agreement. *See id.* at ¶ 29 (entitled, "Warranties and Representations of Authority") (emphasis added).

Finally, the Individual Defendants argue that Plaintiff's fraudulent transfer claims fail because the Pennsylvania Uniform Fraudulent Transfers Act ("PUFTA") cannot be invoked against non-transferees. *See* Individ. Defs.' Br. at 13-14; *see also id.* at 4 (asserting that sale of BFL to Riverside was between those two entities alone). In support of this theory, Defense counsel cites the non-binding opinion in <u>In re Total Containment, Inc.</u>, 335 B.R. 589 (Bankr. E.D. Pa. 2005). *See* Individ. Defs.' Br. at 13-14.

The Individual Defendants' argument fails, however, to account for other decisions contemplating putative liability against non-transferees under "piercing of the corporate veil" and/or "alter-ego" theories. In Pennsylvania, "[t]here is no definitive test for piercing the corporate veil." <u>Plastipak Packaging, Inc. v. DePasquale</u>, 2003 WL 22120971, *1 (3d Cir. Sept. 12, 2003) (citation to Pennsylvania law omitted). "[T]he corporate veil may be pierced whenever necessary to avoid injustice," and "courts apply a totality of the circumstances test." *Id.* (citation and internal quotations omitted). Relevant factors include: failure to observe corporate formalities; non-payment of dividends; insolvency of the debtor corporation; siphoning of funds from the corporation by dominant shareholders; the non-functioning of other officers

and directors; absence of corporate records; whether the corporation is a mere facade for the operations of a common shareholder or shareholders; and gross undercapitalization. *Id.* (citation to quoted source omitted).

Here, Plaintiff has stated sufficient veil-piercing allegations to survive a motion under Federal Rule of Civil Procedure 12(b)(6). *Compare, e.g.*, 2d Am. Compl. at ¶¶ 11-12 (BFL and Indiana Capital were "under the complete and unchecked control" of Wallace and Grojean, "who [made] all business, binding, and day-to-day operation decisions") *with* discussion immediately *supra* (relevant factors include "non-functioning of other officers and directors," and "whether the corporation is a mere facade for the operations of a common shareholder or shareholders"); *see also generally* Orion Power Midwest, L.P. v. American Coal Sales Co., 2008 WL 4462301, *1 (W.D. Pa. Sept. 30, 2008) ("the veil-piercing test is based on a fact-intensive, multi-factor test which [often,] of necessity[,] leads to . . . discovery"); Grunblatt v. UnumProvident Corp., 270 F. Supp.2d 347, 352 (E.D.N.Y. 2003) (veil-piercing "is typically a fact specific inquiry not amenable to resolution [on] a motion to dismiss") (citation and internal quotations omitted).

Furthermore, the undersigned is persuaded by the state and federal court decisions that have left unquestioned the assertion of fraudulent transfer claims against officers/shareholders who, although not formally transferors/transferees, are alleged to be the alter-egos of their corporations. *See, e.g.*, Fletcher-Harlee Corp. v. Szymanski, 936 A.2d 87, 102 (Pa. Super. 2007) (affirming judgment entered against individual defendant, after bench trial, where defendant allegedly was liable under both PUFTA and piercing of corporate veil doctrine); Eliotex, SRL v. Riccelli, 2007 WL 2119212, *2 (W.D. Pa. Jul. 20, 2007) (individual liability alleged under PUFTA where defendants "helped [their corporations] hide assets"); In re Myers, 334 B.R. 136,

140 (E.D. Pa. 2005) (addressing piercing of corporate veil where individuals transferred all assets of two corporations to another "with the intent to defraud" creditor), *aff'd*, 491 F.3d 120 (3d Cir. 2007).[4]

For all of the reasons stated above, the Individual Defendants have failed to demonstrate their entitlement to dismissal at this stage in the proceedings.[5]

### B. Defendant Riverside's Motion to Dismiss (Doc. 53)

Riverside argues that Plaintiff has failed to plead its fraudulent transfer claims with specificity, as required under Federal Rule 9(b). *See* Def. Riverside's Br. at 3-5. The Court of Appeals for the Third Circuit, however, has recognized that Rule 9(b) may be relaxed when the relevant "factual information is peculiarly within the defendant's knowledge or control." *See* EP Medsystems, Inc. v. EchoCath, Inc., 235 F.3d 865, 882 (3d Cir. 2000) (citation to quoted source omitted).

Plaintiff alleges, among other things, that: the Individual Defendants, in combination, own both BFL and Riverside; within months of BFL entering the Master Settlement Agreement, BFL began transferring monies to Riverside; Riverside thereafter operated BFL "as an alter ego of itself"; Riverside has used Plaintiff's assets, post-sale to BFL, in furtherance of Riverside's business operations; the sale of BFL to Riverside has left the former unable to fulfill its financial obligations to Plaintiff; and BFL transferred its assets to Riverside to avoid payments under the Master Settlement Agreement. *See* 2d Am. Compl. at ¶¶ 98-106, 119.

---

[4] Notably, the only decision cited by the Individual Defendants in support of dismissal, Total Containment, makes no reference to piercing the corporate veil. *See id.*

[5] The Individual Defendants' only other request for dismissal, regarding civil conspiracy, is based on the purported insufficiency of Plaintiff's underlying fraud claims. *See* Individ. Defs.' Br. at 14-15. The Court has reached a contrary conclusion, and, therefore, Defendants' argument regarding Plaintiff's civil conspiracy claims is summarily rejected.

As in Medsystems, "[i]t is difficult to see how [Plaintiff] could . . . ple[ad] fraud or scienter with more specificity" before having the opportunity to conduct discovery. *Id.*, 235 F.3d at 882. Plaintiff does not present "a 'cookie cutter complaint' or a class action [for securities fraud] brought by shareholders with an insignificant interest" in the dispute. *See id.* at 881. Rather, Plaintiff has brought "an individual action, based on a transaction" that purportedly affects to its ability to collect monies due under the Master Settlement Agreement. *Cf. id.*

The heightened specificity requirements in Federal Rule 9(b) are intended to "give defendants notice of the claims against them, provide an increased measure of protection for their reputations, and reduce[ ] the number of frivolous suits brought solely to extract settlements." Key Equity Investors, Inc. v. Sel-Leb Marketing Inc., 2007 WL 2510385, *3 n.5 (3d Cir. Sept. 6, 2007) (citation to quoted, binding authority omitted). Plaintiff's pleadings offend none of these principles, and Riverside's Motion to Dismiss will be denied.[6]

Consistent with the discussions above, the Court enters the following:

## II. ORDER

The Individual Defendants' Motion to Dismiss (**Doc. 50**) is **DENIED**, without prejudice to renewal on summary judgment; and Defendant Riverside's Motion to Dismiss (**Doc. 53**) is **DENIED**.

IT IS SO ORDERED.

February 11, 2010                                     s\Cathy Bissoon
                                                      Cathy Bissoon
                                                      United States Magistrate Judge

---

[6] For essentially the same reasons stated above regarding Federal Rule 9(b), Riverside's arguments under *Twombly*/*Iqbal* likewise are rejected.

cc (via email):

All Counsel of Record